[Cite as *Christ v. Christ*, 2021-Ohio-2016.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

TRACY CHRIST,

Plaintiff-Appellee,

v.

KEVIN CHRIST,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 NO 0472

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Noble County, Ohio
Case No. 216-0080

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Miles Fries,* Gottlieb, Johnston, Beam & Dal Ponte, 320 Main Street, P.O. Box 190, Zanesville, Ohio 43702, for Plaintiff-Appellee and

*Atty. Dennis Horvath,* and *Atty. Eric Brown,* Wolinetz & Horvath, LLC, 250 Civic Center Drive, Suite 200, Columbus, Ohio 43215, for Defendant-Appellant.

Dated: June 11, 2021

_____

**D'APOLITO, J.**

{¶1}   Appellant, Kevin Christ, appeals from the January 13, 2020 judgment of the Noble County Court of Common Pleas, Domestic Relations Division, which terminated his and Appellee's, Tracy Christ, marriage, allocated parental rights and responsibilities in accordance with their agreement, provided an award of spousal support to Appellee, divided their marital assets and liabilities, and resolved their competing contempt motions. On appeal, Appellant asserts the trial court abused its discretion with respect to its orders allocating marital assets and liabilities. Appellant also alleges the court abused its discretion with respect to its order awarding spousal support to Appellee. For the reasons stated, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The parties were married on June 22, 2001. Two minor children were born as issue of the marriage, to-wit: A.J.C., d.o.b. 6/20/2004; and P.J.C., d.o.b. 1/31/2007. The parties' marital residence, located at 43157 Parrish Ridge Road, Caldwell, Noble County, Ohio 43724, has an appraised value of around $280,000. The property is encumbered by a first mortgage with a payoff balance around $118,000 and a second mortgage with a payoff balance around $147,000.[1]

{¶3}   Appellant has a Bachelor's of Science Degree in automotive technology. He had five business interests in total in which he was the sole member: (1) Christ Automotive Leasing, LLC; (2) Christ Holdings, LLC; (3) Southeast Ohio Auto Parts, Inc.; (4) APC Oil & Gas, LLC; and (5) Worl Thompson Motors, Inc.

{¶4}   Appellant is self-employed in car sales, mechanical sales and work, and collision work, doing business under Christ Automotive Leasing, LLC. He has an annual gross income of around $77,000. His business causes him to travel throughout Ohio, Pennsylvania, West Virginia, and Virginia. Appellant has done consulting and mechanical

_____

[1] Appellee claims that the second mortgage was used to purchase two Napa Auto Parts stores.

Case No. 20 NO 0472

work for individuals and car manufacturers, including Chrysler, Toyota, and Nissan. He subcontracts through an entity known as Service Solutions.

{¶5} Christ Automotive Leasing, LLC owns commercial real estate in Barnesville, Ohio. Napa Auto Parts leased the property for $5,500 per month. The appraised value of the property is $235,000 and is encumbered by a mortgage with a payoff balance around $136,000.[2] Christ Automotive Leasing, LLC is also the title owner of four vehicles with the following approximate valuations: (1) 2016 Jeep Grand Cherokee (possessed by Appellee, $14,000); (2) 2016 Dodge Ram ($29,000); (3) 2009 Dodge Challenger ($14,000); and (4) 2015 Dodge Challenger ($42,000).

{¶6} Christ Holdings, LLC owns real estate on Buffalo Run Road in Noble County, Ohio. The appraised value of the property is around $111,000. It is encumbered by a mortgage with a payoff balance around $46,000.

{¶7} Appellant has life insurance with a cash value around $3,100. Appellant has an IRA with Stifel. The balance on that account went from around $122,000 in January 2017 to zero at the time of trial.[3]

{¶8} Substantial debt exists in this case including tax debt (Southeast Ohio Auto Parts, Inc. and Worl Thompson Motors, Inc., $120,000); debt that is in collection ($175,000); and judgment debt ($950,000).

{¶9} Appellee is a second-grade teacher at Shenandoah Elementary School. She has an annual gross income of around $48,000. Appellee pays into STRS which has a vested balance around $39,000. She has health insurance through her employment which also covers the minor children. She also has a Stifel IRA with a balance around $3,300. Appellee's debts included a Chase credit card with a balance around $5,400, an $8,500 loan with America's Christian Credit Union, and an $1,100 dental bill for A.J.C.

{¶10} On July 22, 2016, Appellee filed a complaint for divorce. Appellant filed an answer and motion for conciliation and family counseling.[4]

---

[2] Two other Napa stores are also included in the record. The three stores had incurred substantial debt and were ultimately foreclosed on.

[3] Appellant's liquidation of his IRA violated a TRO.

[4] Appellant subsequently filed an amended answer. The court appointed various guardians ad litem for the minor children.

**{¶11}** The matter came before the trial court on October 7, 2016, at which time the court was advised that the parties had reached an agreement regarding motions for conciliation and for temporary orders. In its October 12, 2016 judgment, the court approved the agreement after finding it to be fair and equitable, dismissed Appellant's motion for a conciliation order, ordered the parties to remain as the temporary residential parents and legal custodians of the minor children, and ordered them to continue sharing parenting time and expenses.

**{¶12}** Thereafter, the parties engaged in mediation. They reached an agreement for temporary orders on March 30, 2017 regarding parenting time and counseling for the minor children.

**{¶13}** On May 4, 2017, Appellee filed a motion for contempt alleging that Appellant repeatedly violated a Temporary Restraining Order ("TRO") by communicating with her via text messaging in a harassing and intimidating manner. The next day, Appellee filed another motion to preclude Appellant from moving the minor children from their current residence, modify the parenting time schedule, and modify the temporary order requiring her to contribute one-half of the minor children's expenses. On May 8, 2017, Appellant filed a motion that a TRO be "implied" on Appellee and sought permission for the minor children to apply for U.S. passports. On June 20, 2017, Appellee filed another motion to find Appellant in contempt for failing to get the minor children to counseling and designating her as the temporary residential parent and legal custodian. The following week, Appellant filed a motion to modify temporary orders and a motion for contempt against Appellee. Appellee filed another motion for contempt against Appellant on August 4, 2017.

**{¶14}** A hearing was held before the trial court on the contempt motions. On September 11, 2017, the court found Appellant to be in contempt, sentenced him to 30 days in jail, and designated Appellee as temporary residential parent and legal custodian of the minor children. Upon motion of Appellant, the court suspended execution of his incarceration subject to conditions.

**{¶15}** While the divorce action remained pending in the trial court, Appellant filed an appeal with this court, Case Nos. 17 NO 0453 and 17 NO 0454, regarding his contempt.

Case No. 20 NO 0472

{¶16} On October 10, 2017, Appellant filed a motion for an ex parte order establishing a schedule of parenting time. Appellee filed an opposition. The following week, Appellant filed another motion for contempt. Appellee filed an opposition. On December 1, 2017, Appellee filed another motion for contempt. The parties reached an agreement and an agreed interim temporary order regarding parenting time was filed on December 12, 2017.

{¶17} On January 22, 2018, Appellee filed another motion for contempt. On March 8, 2018, Appellant filed motions for an in camera interview with the minor children and for an order appointing an attorney advocate. A hearing was held before the trial court on the contempt motion.

{¶18} On April 10, 2018, the trial court found Appellant in contempt and sentenced him to 60 days in jail, 30 days suspended depending upon how this court ruled on the appeal which was pending, Case Nos. 17 NO 0453 and 17 NO 0454. On December 31, 2018, this court affirmed in part, reversed in part, and remanded the matter to the trial court on the sole issue of attorney fees. *T.C. v. K.C.*, 7th Dist. Noble Nos. 17 NO 0453 and 17 NO 0454, 2018-Ohio-5403.

{¶19} Upon remand, the trial court found the parties had reached an agreement. An agreed entry was filed on February 21, 2019 in which the court adopted the parties' stipulation as to the reasonableness and amount ($1,950.50) in legal fees related to the contempt.

{¶20} On August 5, 2019, Appellant filed a proposed shared parenting plan, and an amended proposed shared parenting plan on August 30, 2019.

{¶21} The parties' underlying divorce action proceeded to trial on September 3 and 4, 2019. The parties utilized September 3 by entering into a written agreement regarding the allocation of parental rights and responsibilities with the exception of child support. The court conducted a contested trial on September 4 regarding all other financial matters.

{¶22} The parties agreed that Appellee shall be designated as residential parent and legal custodian of the minor children and that Appellant shall exercise scheduled

parenting time.[5]  On September 4, 2019, the trial court approved the parties' proposed resolution, finding it to be in the best interest of the minor children.  The parties each submitted proposed findings of fact and conclusions of law.

**{¶23}** On January 13, 2020, the trial court, inter alia, terminated the parties' marriage, allocated parental rights and responsibilities in accordance with their agreement, provided an award of spousal support to Appellee, divided their marital assets and liabilities, and resolved their competing contempt motions.[6]

**{¶24}** Appellant filed this appeal, Case No. 20 NO 0472, and raises two assignments of error.

### ASSIGNMENT OF ERROR NO. 1

### THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WITH RESPECT TO ITS ORDERS ALLOCATING MARITAL ASSETS AND LIABILITIES.

**{¶25}**  In his first assignment of error, Appellant argues the trial court abused its discretion regarding its orders allocating marital assets and liabilities.  Specifically, Appellant contends the court improperly declared a de facto termination of marriage; did not make sufficient findings of fact to support its conclusions regarding the division of marital property; improperly reserved jurisdiction over the division of assets and liabilities; improperly ordered marital assets to be liquidated at public auction; utilized an exhibit that was not offered or admitted at trial; and failed to dispose of all assets and liabilities.

**{¶26}**  "[W]e review a domestic relations order dividing marital assets and liabilities on an abuse of discretion standard." *Locke v. Locke*, 7th Dist. Columbiana No. 99-CO-18, 2000 WL 1847661, * 2 (Dec. 12, 2000), citing *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 94. "An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable." *Dimmerling*

---

[5] The parties' oldest child, A.J.C., is boarded at Linsly, a private school in West Virginia.  Appellant is responsible for the tuition.  The parties' youngest child, P.J.C., attends Caldwell Elementary School.

[6] The trial court established a de facto termination date for the parties' marriage as July 22, 2016, the date Appellee filed her complaint for divorce.  A support order, attached to the entry, orders Appellant to pay a monthly child support obligation in the amount of $1,084.47 for the minor children.

*v. Dimmerling*, 7th Dist. Noble No. 18 NO 0460, 2019-Ohio-2710, ¶ 17, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶27}** "In divorce proceedings, the trial court must classify property as marital or separate, determine the value of that property, and then divide the marital property equitably between the spouses. R.C. 3105.171(B)." *Lunger v. Lunger*, 7th Dist. Columbiana No. 16 CO 0026, 2017-Ohio-9008, ¶ 9.

**{¶28}** In its January 13, 2020 judgment entry, the trial court stated the following:

PROPERTY DIVISION

The assets and liabilities are set forth in Defendant's exhibit A (attached). There is also the law suit against the Schleappi's. The assets and liabilities are marital.

Plaintiff is awarded the 2015 Kia and should pay any debt thereon. Defendant is awarded 2016 Jeep Grand Cherokee and shall pay any debt thereon.

Unless otherwise agreed by the parties, except for Plaintiff's STRS account and Stifel Nicholas [sic] IRA #7227, all remaining assets shall be sold at public auction, on or before May 1, 2020, and the proceeds applied to the liabilities as listed. Any excess shall be distributed as follows: the first $58,000.00 to Plaintiff, and the balance one-half to each party.

The Court is, and has been, very curious as to the motives of Defendant. With liabilities exceeding assets by over $1,250,000.00, it would seem that Bankruptcy is in the offing. If bankruptcy is filed by one or both of the parties; or if the listed liabilities are not liabilities at all, and there are net proceeds of sale after all liabilities are liquidated; the Court retains jurisdiction to equitably deal with that situation.

(1/13/2020 Judgment Entry, p. 2-3)

Case No. 20 NO 0472

{¶29} Appellant, in his six specific arguments under his first assignment of error, asserts the trial court abused its discretion regarding its orders allocating marital assets and liabilities. Appellant maintains the court erred in arriving at its property division, thereby resulting in an inequitable division.

{¶30} First, Appellant alleges the trial court improperly declared a de facto date of marriage.

{¶31} "A trial court's determination as to the duration of marriage under R.C. 3105.171(A)(2) is reviewed for an abuse of discretion." *Dimmerling, supra*, at ¶ 22, citing *Lemarr v. Lemarr,* 1st Dist. Hamilton No. C-100706, 2011-Ohio-3682, ¶ 4.

{¶32} R.C. 3105.171(A) states:

(2) "During the marriage" means whichever of the following is applicable:

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

R.C. 3105.171(A)(2)(a) and (b)

{¶33} The trial court found "[t]he term of the marriage was from June 22, 2001 until July 22, 2016 when the complaint was filed." (1/13/2020 Judgment Entry, p. 1). Thus, the court used the date the parties were married as the start date of the marriage. Instead of using the R.C. 3105.171(A)(2)(a) presumptive final hearing end date, the court used the date Appellee filed her complaint for divorce as the end date of the marriage.

"Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, continually maintain

separate residences, separate business activities and/or separate bank accounts. * * * Courts should be reluctant to use a de facto termination of marriage date solely because one spouse vacates the marital home. * * * Rather, a trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances."

*Dimmerling, supra,* at ¶ 35, citing *Marini v. Marini*, 11th Dist. Trumbull No. 2005-T-0012, 2006-Ohio-3775, ¶ 13.

**{¶34}** "'It is the duration of marriage that determines the valuation of the marital estate. Therefore, once the duration of marriage is established, assets and liabilities are determined in accordance with those dates.'" *Dimmerling, supra,* at ¶ 21, quoting *Alexander v. Alexander*, 10th Dist. Franklin No. 09-AP-262, 2009-Ohio-5856, ¶ 37. Thus, if a trial court utilizes a de facto termination date, it is an abuse of discretion to then use present values for assets instead of values for the accepted de facto termination date. *Alexander* at ¶ 37.

**{¶35}** Neither party requested a de facto termination of marriage. Neither party prepared their case nor presented evidence and testimony with a de facto termination date in mind. There was no evidence presented with respect to a valuation of assets or liabilities for July 22, 2016, the de facto termination date. Therefore, because the trial court utilized a de facto termination date, it abused its discretion by then utilizing present values for some of the parties' assets and liabilities instead of values for the identified de facto termination date. *Id.* The court did not offer any reasoning for using different dates of valuation.

**{¶36}** The record reflects that the parties maintained a joint bank account through the contested divorce trial. The record further reflects that Appellee unilaterally relocated out of the marital home which does not favor a de facto termination date. *Dimmerling, supra,* at ¶ 35. In addition, Appellant initially actually opposed the termination of the parties' marriage. As stated, following Appellee's complaint for divorce, Appellant filed a responsive pleading for conciliation and family counseling which demonstrates that the decision was not bilateral.

**{¶37}** Based on the totality of the circumstances, the trial court's July 22, 2016 de facto termination date was not appropriate because the evidence does not support a finding of a clear and bilateral termination of the parties' marriage. *Id.*

**{¶38}** Second, Appellant contends the trial court did not make sufficient findings of fact to support its conclusions regarding the division of marital property.

**{¶39}** R.C. 3105.171(G) states:

> In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."

**{¶40}** "'[I]n allocating property between the parties to a divorce * * * the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law.'" *Faller v. Faller*, 7th Dist. Mahoning No. 07 MA 216, 2008-Ohio-6638, ¶ 14, quoting *Kaechele, supra*, at paragraph two of the syllabus.

**{¶41}** The trial court's judgment entry which terminates the parties' marriage totals three pages in length. (1/13/2020 Judgment Entry). On the first page, the trial court defined the duration of the parties' marriage pursuant to R.C. 3105.171(G). The court, however, allocated only one-half page in its entry to "Property Division," as quoted above. The court made no express finding in sufficient detail to enable this court to determine that the division of property is fair, equitable, and in accordance with the law. *See Faller, supra,* at ¶ 14; *see also Fritz v. Fritz*, 7th Dist. Columbiana No. 93-C-66, 1995 WL 75405, * 2 (Feb. 17, 1995) ("there is not enough information [in the judgment entry] for this Court to determine whether the marital assets have been divided in an equitable manner").

**{¶42}** Third, Appellant argues the trial court improperly reserved jurisdiction over the division of assets and liabilities.

**{¶43}** "'[A] division of marital property is not subject to modification through the continuing jurisdiction of the court.'" *Holden v. Holden*, 12th Dist. Brown No. CA2015-07-

016, 2016-Ohio-5557, ¶ 34, quoting *Robins v. Robins,* 10th Dist. Franklin No. 04AP–1152, 2005-Ohio-4969, ¶ 11.

**{¶44}** R.C. 3105.171(I) provides in part: "A division or disbursement of property * * * is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses."[7]

**{¶45}** Here, there is no express written consent or agreement to modification by both parties. Again, at the conclusion of the "Property Division" section in the judgment entry, the trial court, while speculating regarding the prospect of bankruptcy, indicated that it "retains jurisdiction to equitably deal with that situation." (1/13/2020 Judgment Entry, p. 3). Even if a bankruptcy filing occurs, the trial court cannot reserve jurisdiction over the issue of property division. As there is no agreement by both parties, the trial court's order violates R.C. 3105.171(I).

**{¶46}** Fourth, Appellant stresses the trial court improperly ordered marital assets to be liquidated at public auction.

**{¶47}** A domestic relations judge has the authority to order marital property to be sold at auction if doing so would be equitable. *Gatchel v. Gatchel*, 7th Dist. Columbiana No. 12 CO 44, 2013-Ohio-5289, ¶ 51, citing *Hiscox v. Hiscox,* 7th Dist. Columbiana No. 06CO18, 2007-Ohio-1124, ¶ 54-55; R.C. 3105.171(J)(2) ("The court may issue any orders under this section that it determines equitable, including * * * [a]n order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court."

**{¶48}** The trial court's power to order a sale or an auction is not absolute. *Gatchel* at ¶ 52, citing *Hiscox* at ¶ 61. "[I]t has been held that an auction should not normally be ordered where there is a reasonable chance of fair, timely and voluntary sale." *Id.* An auction should not be ordered as punishment and when items will sell for a fraction of their worth. *Gatchel* at ¶ 65. A "reasonable division would not * * * [be] burdensome to the court. This is the purpose of a divorce court: to settle the property distribution because the parties cannot." *Id.*

---

[7] The legislature added the exception language within R.C. 3105.171(I) on June 8, 2010. All of the case law relied upon by Appellee in her brief pre-date the amended version of the statute at issue.

{¶49} As stated under "Property Division," the trial court ordered all marital assets, with the exception of two cars and Appellee's STRS benefit and Stifel IRA, to be sold at public auction and for the proceeds to be "applied to the liabilities as listed." (1/13/2020 Judgment Entry, p. 2). In the event that any proceeds remained after satisfaction of debts "as listed," the trial court ordered that the first $58,000 shall be allocated to Appellee and any balance to be equally divided between the parties. (*Id.*)

{¶50} The trial court offered no reason as to why it ordered all remaining assets to be sold at public auction. There was no evidence that the parties' assets, including real estate, automobiles, and recreational vehicles, could not reasonably be disposed of in a "fair, timely and voluntary sale," which would likely result in significantly greater sale proceeds for the parties. *Gatchel* at ¶ 52, citing *Hiscox* at ¶ 61. Based on the facts presented, the trial court improperly ordered the foregoing marital assets to be liquidated at public auction.

{¶51} Fifth, Appellant maintains the trial court utilized an exhibit that was not offered or admitted at trial.

{¶52} As indicated, the first sentence in the trial court's judgment entry under "Property Division" states: "The assets and liabilities are set forth in Defendant's exhibit A (attached)." (1/13/2020 Judgment Entry, p. 2). However, neither party offered the referenced spreadsheet as an "exhibit A" and thus, the trial court never admitted such as a trial exhibit. Therefore, "Defendant's exhibit A" is not a part of the record. *Casler v. Casler*, 7th Dist. Carroll No. 571, 1990 WL 131357, * 2 (Sept. 6, 1990) (A "court speaks through its record"); *Anderson v. Holskey*, 7th Dist. Belmont No. 08 BE 37, 2009-Ohio-3053, ¶ 18 (An item which is not a part of the trial court's record is not properly before an appellate court).

{¶53} The exhibit referenced by the trial court does not identify all of the parties' assets and liabilities as the court suggested. The document cited by the trial court is in fact captioned as a "Preliminary Estimated Balance Sheet."[8]

---

[8] In her brief, Appellee references another balance sheet, Plaintiff's Exhibit 9, which varies from the "exhibit" that the trial court attached to its judgment entry. Exhibit 9 was admitted but not incorporated into the court's judgment entry.

Case No. 20 NO 0472

**{¶54}** The trial court improperly utilized an exhibit that was not offered or admitted at trial. By referencing the incomplete and inaccurate list, the court did not allocate all assets and liabilities "as listed."

**{¶55}** Sixth, Appellant asserts the trial court failed to dispose of all assets and liabilities.

**{¶56}** R.C. 3105.171(B) states in part: "In divorce proceedings, the court shall, * * * determine what constitutes marital property and what constitutes separate property [and] * * * shall divide the marital and separate property equitably between the spouses[.]"

**{¶57}** "'A divorce decree that does not dispose of all property is insufficient and incomplete.'" *Link v. Link*, 3rd Dist. Mercer No. 10-11-21, 2012-Ohio-4654, ¶ 39, quoting *Schiesswohl v. Schiesswohl,* 9th Dist. Summit No. 21629, 2004-Ohio-1615, ¶ 41.

**{¶58}** Appellant has identified Appellee's personal loan with America's Christian Credit Union and the Schleappi lawsuit as the "minimum" shortcomings in the trial court's balance sheet affixed to the judgment entry. (5/28/2020 Appellant's Brief, p. 13). Nowhere in the judgment entry does it state that there should be an equal division of proceeds from the Schleappi lawsuit. Also, the trial court did not address the likelihood of remaining debt and which party would be responsible for paying it following the sale of assets. In addition, Appellee also identified a number of other assets that were unaccounted for in the trial court's balance sheet: "tire machines, a skid steer, a backhoe and an old white truck." (1/25/2021 Appellee's Brief, p. 11). Accordingly, the judgment entry is "insufficient and incomplete." *Link, supra,* at ¶ 39; *Schiesswohl, supra,* at ¶ 41.

**{¶59}** Because the trial court abused its discretion regarding its property division order, Appellant's first assignment of error is with merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WITH RESPECT TO ITS ORDER AWARDING SPOUSAL SUPPORT TO APPELLEE.**

**{¶60}** In his second assignment of error, Appellant alleges the trial court abused its discretion regarding its order awarding spousal support to Appellee in the amount of

$500 per month for a term of five years. Specifically, Appellant asserts the court failed to properly consider the R.C. 3105.18 statutory factors; improperly allocated assets in lieu of spousal support; and its award of spousal support was not appropriate and reasonable.

**{¶61}** We review matters involving spousal support decisions under an abuse of discretion standard. *Plymire v. Plymire*, 7th Dist. Noble No. 17 NO 0443, 2018-Ohio-2786, ¶ 88.

**{¶62}** In determining whether a spousal support award is appropriate and reasonable and in fashioning that award, the trial court "*shall* consider *all* of the following factors":

(a) The income of the parties, from all sources, * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

(Emphasis added) R.C. 3105.18(C)(1)

Although the court need not expressly comment on each factor or explain its reasoning in minute detail, the court must state the underlying basis for the award and the court's findings must enable the reviewing court to determine the award was reasonable and that the relevant factors were considered. *Graham v. Graham,* 7th Dist. No. 08NO353, 2009-Ohio-6876, ¶ 32; *Miller v. Miller,* 7th Dist. No. 08JE26, 2009-Ohio-3330, ¶ 142. Specifically, the trial court must indicate its basis for the award of spousal support in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 97. Thus, if the entry does not provide some illumination of the facts and reasoning for the award, the case should be remanded. *Lepowsky v. Lepowsky,* 7th Dist. No. 04CO42, 2006-Ohio-667, ¶ 52-55. * * * [W]e do not presume [that] the trial court considered [all of] the [statutory] factors[.]

*Boney v. Boney*, 7th Dist. Noble No. 09 NO 363, 2010-Ohio-4245, ¶ 23.

{¶63} In its January 13, 2020 judgment entry, the trial court stated the following:

SPOUSAL SUPPORT

Case No. 20 NO 0472

After consideration of the factors found in R.C. Section 3105.18, the Court awards spousal support to Plaintiff as follows:

1.) In a lump sum in the form of her STRS account and Stifel Nicholas [sic] IRA #7227: and,

2.) In period payments as follows: $500.00 per month, commencing February 1, 2020, and continuing on the 1st day of each month thereafter for a total of 60 months. Payments to be made through the Noble County Child Support Enforcement Agency plus poundage. Said periodic payments to cease should Plaintiff die, remarry, or live in a conjugal relationship with another person.

The Court retains jurisdiction on this matter.

(1/13/2020 Judgment Entry, p. 3)

{¶64} Appellant, in his three specific arguments under his second assignment of error, asserts the trial court abused its discretion with respect to its order awarding spousal support to Appellee.

{¶65} First, Appellant contends the trial court failed to properly consider the statutory factors found at R.C. 3105.18.

{¶66} Upon review, the foregoing judgment entry suffers from the same "paucity of findings regarding spousal support" as in *Boney,* where this court found error and remanded. *Boney, supra,* ¶ 30. There is no "illumination of the facts and reasoning" for the award of spousal support such that this court can undertake any meaningful review of the order. *Id.* at ¶ 23.[9]

{¶67} In general, the trial court identified the income of the parties by way of the child support worksheet attached to the judgment entry, defined the duration of marriage, and allocated assets and liabilities. *See* (1/13/2020 Judgment Entry); R.C. 3105.18(C)(1)(a), (e), and (i). However, there is no indication through sufficient detail that

---

[10] Contrary to Appellee's position, this court may not review the spousal support award merely upon either of the parties' proposed findings of fact and conclusions of law as the trial court did not adopt either of those pleadings.

Case No. 20 NO 0472

the trial court considered the following relevant statutory factors, including: the relative earning abilities of the parties; their ages and physical, mental, and emotional conditions; their standard of living established during the marriage; their relative extent of education; any court-ordered payments; the contribution of each party to the education, training, or earning ability of the other party; the tax consequences of an award of spousal support for each party; and any other factors that are relevant and equitable. *See Id.*; R.C. 3105.18(C)(1)(b), (c), (g), (h), (i), (j), (l), and (n).

**{¶68}** Rather, the trial court merely made a conclusory statement in its judgment entry that it considered the R.C. 3105.18 statutory factors. This is not sufficient detail. *See Floyd v. Floyd*, 7th Dist. Mahoning No. 95 C.A. 54, 1996 WL 331111, * 2 (June 12, 1996) ("The factors used for the basis of the trial court's decision should be explained in order to permit proper review"); *Rudloff v. Rudloff*, 7th Dist. Mahoning No. 96 CA 60, 1999 WL 689238, * 6 (Aug. 26, 1999) (The matter was remanded because the trial court merely made a conclusory statement that it considered the R.C. 3105.18(C)(1) statutory factors in fashioning its spousal support award); *Herman v. Herman*, 11th Dist. Portage No. 96-P-0194, 1997 WL 158106, * 5 (Mar. 28, 1997) (Because the trial court's conclusory references to some of the R.C. 3105.18(C)(1) statutory factors did not satisfy the *Kaechele* standard, the appellate court refused to speculate regarding the deliberative process employed by the trial court in reaching its spousal support award and remanded the matter). Thus, this court remands the issue of spousal support because the trial court failed to properly consider the R.C. 3105.18(C)(1) statutory factors.

**{¶69}** Second, Appellant takes issue with the trial court's allocation of the STRS benefit and Stifel IRA both as part of the property division and as part of the award of spousal support. (1/13/2020 Judgment Entry, p. 2-3).

**{¶70}** R.C. 3105.18(A) expressly defines "'spousal support'" to "not include any payment made to a spouse * * * that is made as part of a division or distribution of property or a distributive award under section 3105.171 of the Revised Code." Because the award of those assets was "made as part of a division or distribution of property," it appears the trial court improperly also included those assets as an award of spousal support to Appellee, which the court shall clarify and/or correct on remand. R.C. 3105.18(A).

**{¶71}** Third, Appellant contends the $500 per month spousal support award to Appellee was not appropriate and reasonable due to his inability to pay as his net monthly expenses nearly approximate his gross monthly income.

**{¶72}** Upon considering all of the statutory factors on remand, the trial court must indicate its basis for an award of spousal support in sufficient detail pursuant to that which is appropriate and reasonable for the parties in accordance with Appellant's ability to pay. *See Boney, supra,* ¶ 23; *White v. White*, 7th Dist. Columbiana No. 02-CO-74, 2003-Ohio-3279, ¶ 32 (An award of spousal support should not exceed the obligor's ability to pay and is based upon that which is appropriate and reasonable for the one seeking support to receive it as well as for the other party to have to pay it).

**{¶73}** Because the trial court abused its discretion regarding its spousal support order, Appellant's second assignment of error is with merit.

## CONCLUSION

**{¶74}** For the foregoing reasons, Appellant's assignments of error are well-taken. The judgment of the Noble County Court of Common Pleas, Domestic Relations Division, is reversed and the matter is remanded for further proceedings consistent with this opinion.

Waite, J., concurs.

Robb, J., concurs.

Case No. 20 NO 0472

[Cite as *Christ v. Christ*, 2021-Ohio-2016.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Noble County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**